# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3953 | **DATE** | 8/6/2002 |
| **CASE TITLE** | Linda Mangano vs. Michael F. Sheahan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motion for summary judgment [37-1] is granted in part and denied in part. Proceedings will continue on plaintiff's sexual harassment claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

3
number of notices

AUG 0 7 2002
date docketed

docketing deputy initials

8/6/2002
date mailed notice

IS
courtroom deputy's initials

CLERK U.S. DISTRICT COURT

02 AUG -6 PM 1:28

Date/time received in central Clerk's Office

IS
mailing deputy initials

Document Number

54

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED
AUG 0 7 2002

| | | |
|---|---|---|
| LINDA MANGANO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00 C 3953 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| MICHAEL F. SHEAHAN, Sheriff of | ) | |
| Cook County, in his official capacity, and | ) | |
| the COOK COUNTY SHERIFF'S OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 29, 2000, Plaintiff filed a complaint against Defendants alleging sex discrimination and sexual harassment in violation of 42 U.S.C. § 2000e-2(a)(1).[1] Presently before this Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). Defendants maintain that Plaintiff's discrimination claim should not go before a jury because Plaintiff has failed to present any direct or indirect evidence of discrimination. In addition, Defendants maintain that they are entitled to summary judgment on Plaintiff's harassment claim either because no reasonable jury could find that Plaintiff worked in a hostile environment or because Defendants are able to prove the *Ellerth/Faragher* affirmative defense as a matter of law. For the following reasons, Defendants' motion is granted in part and denied in part.[2]

---

[1] Plaintiff's complaint also contained a retaliation claim under 42 U.S.C. § 2000e-3(a). On May 30, 2002, Plaintiff voluntarily withdrew this claim in open court.

[2] The parties have consented to have this Court conduct any and all proceedings,

(continued...)

54

# I.  <u>Background</u>[3]

In January 1996, Plaintiff accepted a deputy sheriff position with Defendants at the
Maywood facility.  Plaintiff's duties included reporting to the Maywood facility three times per
week to receive her assignments, serving summonses in her assigned district—Franklin
Park—and completing certain paperwork regarding her daily activities.  Upon Plaintiff's arrival
to the Maywood facility, Sergeant Anthony Baratta and Sergeant Sue Saviano supervised
Plaintiff.  Sgt. Baratta and Sgt. Saviano reported to Lieutenant Louis Clepp; Lt. Clepp reported to
Watch Commander Andrew DeTolve; Watch Cmdr. DeTolve reported to Assistant Chief Terry
Geraci, a male; and Asst. Chief Geraci reported to Chief Deputy Geraldine Kirst.  (Pl.'s Local
Rule 56.1(b)(3)(A) Resp. ¶ 1.)

When Plaintiff arrived for her first day of work in January 1996, Sgt. Baratta told a
deputy sheriff to "take [Plaintiff] out on the streets and scare the shit out of [her]."  (Pl.'s Dep. at
62.)  Weeks later, on February 9, Plaintiff arrived at C & A Construction Company to serve a
summons.  According to Plaintiff, she handed the summons to Arnold Berkovitz and left the
building.  As Plaintiff walked toward her vehicle a young man ran toward Plaintiff screaming at
her.  The man proceeded to throw the summons, and then rocks, at Plaintiff's vehicle.  Plaintiff
contacted Sgt. Baratta asking for assistance to arrest the man but Sgt. Baratta refused to send
anyone to assist Plaintiff.  Plaintiff then contacted Sgt. Saviano and she assisted Plaintiff in

---

[2](...continued)
including the entry of final judgment.  *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

[3]  The following facts are taken from the parties' Local Rule 56.1 submissions.  In
accordance with Local Rule 56.1, we have disregarded statements containing conclusory
allegations or facts unsupported by specific (and accurate) citations to the record.  Unless
indicated, the facts narrated in this section are not in dispute.

obtaining the assistance of the Franklin Park Police. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶¶ 50-54.) Later that month, Sgt. Baratta reassigned Plaintiff to the Berwyn/Cicero district.

On a regular basis Sgt. Baratta referred to breasts and other parts of the female anatomy in the presence of Plaintiff. Virtually every day Plaintiff was at the Maywood facility Sgt. Baratta grabbed his testicles and said, "[T]his is what we need around here, more balls." (Pl.'s Aff. ¶ 19.) On numerous occasions Sgt. Baratta told Plaintiff that "women don't belong on this job." (Defs.' Local Rule 56.1(a) Resp. ¶ 31.) Plaintiff found these comments to be highly offensive.

In April or May of 1996, Plaintiff met with Watch Cmdr. DeTolve and Asst. Chief Geraci to discuss Sgt. Baratta's conduct. (Id. ¶¶ 52, 54.) Plaintiff complained that she was tired of Sgt. Baratta's actions and comments about women's breasts. Plaintiff said that she had to "sit there and listen [about] blow jobs and [about] who did this and . . . that." (Id. ¶ 55.) Plaintiff asked Watch Cmdr. DeTolve and Asst. Chief Geraci to do something about Sgt. Baratta. (Id.) Watch Cmdr. DeTolve and Asst. Chief Geraci assured Plaintiff that something would be done, but they asked Plaintiff not to complain to Internal Affairs or to write any record of her complaints. (Id. ¶ 56.) Plaintiff decided against complaining to Internal Affairs. (Id. ¶ 57.) According to Plaintiff, Sgt. Baratta's conduct became worse. (Pl.'s Dep. at 117.)

In May or June of 1996, Plaintiff complained to Deputy Chief Kirst and Chief Mary Jo O'Leary about Sgt. Baratta during a meeting at Deputy Chief Kirst's office. Plaintiff told Deputy Chief Kirst and Chief O'Leary that Sgt. Baratta regularly used foul language in the presence of female deputy sheriffs, that Sgt. Baratta regularly made comments about the anatomies of female deputy sheriffs such as "look at the tits on her" or "what an ass she has," and that Sgt. Baratta regularly grabbed his testicles and said the sheriff's department "needs more balls." (Defs.' Local

Rule 56.1(a) Resp. ¶ 50.) Plaintiff also told Deputy Chief Kirst and Chief O'Leary that Plaintiff

had asked Sgt. Baratta to refrain from making offensive comments and engaging in offensive

actions but that Sgt. Baratta refused to stop. (*Id.*) Lastly, Plaintiff informed Deputy Chief Kirst

and Chief O'Leary that Plaintiff felt overworked. (Pl.'s Dep. at 121.) Deputy Chief Kirst stated

that she would take care of it. (Defs.' Local Rule 56.1(a) Resp. ¶ 51.)

Around December 1996, Ron Calderone replaced DeTolve as the watch commander and

Eugene Sacco replaced Geraci as the assistant chief. Six months later, Defendants implemented

a change in policy that resulted in Plaintiff's having to report to the Maywood facility at the

beginning and end of her shift. Plaintiff, like all other deputy sheriffs, was also required to

complete more paperwork regarding her daily activities.

In June or July of 1997, Sgt. Baratta, in the presence of Plaintiff, commented on Lt. Maria

Ribaldo's breasts: "I don't know how [Lt. Ribaldo] can stand up, she should be falling over

because of her big tits." (*Id.* ¶ 27.) Around this same time Teresa Barodi was wearing a shirt

with a yellow smiling face on the front. Sgt. Baratta remarked that the shirt had a smile on it

because Barodi's "tits were in high gear." (*Id.* ¶ 28.) Plaintiff also recalled Sgt. Baratta's staring

at Deputy Sheriff Mary Ventrella's buttocks and saying, "What an ass." (*Id.* ¶ 29.)

In July 1997, Sgt. Saviano gave Plaintiff an order that was in conflict with an order

previously given to Plaintiff by Sgt. Baratta. Upon learning of this, Sgt. Baratta said that "[h]e

was the fucking boss and that [Plaintiff] had better fucking do as [told]." (*Id.* ¶ 33.) Sgt. Baratta

continued: "This is not a woman's job. Every time a fucking woman is involved everything is

ruined. We don't need any fucking women around here." (*Id.*) Plaintiff recalled a similar

instance that month when Sgt. Baratta ignored Plaintiff's questions about work distribution.

Sgt. Baratta said: "[D]on't question what I do, just do what I say. That's why we don't need women in this unit always asking questions." (*Id.* ¶ 34.)

On July 5, 1997, Sgt. Baratta was unable to contact Plaintiff by radio while she was in the field. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶ 19.) The next day Plaintiff submitted a memorandum to Sgt. Baratta requesting a meeting with Watch Cmdr. Calderone. (*Id.* ¶ 21.) The day after, on July 7, Sgt. Baratta initiated a Summary Punishment Action Request against Plaintiff because on July 5 Plaintiff had failed to immediately report the malfunction of her radio. (*Id.* ¶ 22.) Asst. Chief Sacco ultimately denied Sgt. Baratta's request. (*Id.*)

Also on July 7, Sgt. Baratta counseled Plaintiff for not serving a sufficient number of summonses on July 5 and July 6. (*Id.* ¶ 25.) After counseling Plaintiff, Sgt. Baratta ordered Plaintiff to work alone at a table, away from the other deputy sheriffs. Sgt. Baratta later walked over to Plaintiff and ordered her to join the other deputy sheriffs. Plaintiff felt belittled and embarrassed as a result of the experience.[4] (Pl.'s Dep. at 140.)

The next day Plaintiff submitted a memorandum to Asst. Chief Sacco about Plaintiff's performance on July 6. Plaintiff indicated that Sgt. Baratta refused to send another deputy sheriff with Plaintiff to assist her. Plaintiff then criticized Sgt. Baratta for being unfair. According to Plaintiff, she had been performing better than other deputy sheriffs whom Sgt. Baratta treated more favorably. Near the end of her memorandum, Plaintiff asked Asst. Chief Sacco to conduct an investigation. (Defs.' Local Rule 56.1(a) Resp. ¶ 35; Pl.'s Local Rule 56.1(b)(3)(A) Resp.

_____

[4] This version of the incident differs from that narrated in Plaintiff's July 9, 1997 memorandum to Asst. Chief Sacco. (*See* Defs.' Ex. 8 at 12.) In the memorandum, Plaintiff wrote that she wanted to work alone but that Sgt. Baratta would not let Plaintiff do so.

¶ 27.) Later that day, Plaintiff sent another memorandum to Asst. Chief Sacco requesting him to meet with Plaintiff as soon as possible. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶ 28.)

According to Sgt. Baratta, as he was walking from the parking lot at the Maywood facility on July 8, Plaintiff shouted, "Sgt. Baratta, you are no fucking man until you get in my face." (*Id.* ¶ 26.) Plaintiff then yelled, "Sgt. Baratta, I will destroy you . . . Sheriff Sheahan will . . . straighten your ass out. [You are] no fucking man." (*Id.*) Plaintiff did not recall the confrontation, and Deputy Sheriff Ventrella denied that any such confrontation took place. (Pl.'s Dep. at 152; Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶¶ 26, 31.)

In a July 9, 1997 memorandum to Asst. Chief Sacco, Plaintiff alleged that Sgt. Baratta was unfair to Plaintiff on July 7 by forcing an unfavorable table assignment upon her. Plaintiff also alleged that Sgt. Baratta had "been harassing [Plaintiff] since the beginning" and treating her unfairly. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶ 29.) Plaintiff requested a meeting with Asst. Chief Sacco as soon as possible to discuss Sgt. Baratta's conduct. (*Id.*)

The next day, on July 10, Sgt. Baratta submitted a memorandum to Asst. Chief Sacco to explain what took place between Plaintiff and Sgt. Baratta on July 8. (*Id.* ¶ 30.) On July 11, Deputy Sheriff Ventrella submitted a memorandum to Sgt. Baratta, per Sgt. Baratta's request, about what took place on July 8. Deputy Sheriff Ventrella indicated that Sgt. Baratta exited the building and walked toward the parking lot. A few minutes later, Sgt. Baratta returned and entered the building. (*Id.* ¶ 31.) Sgt. Baratta criticized Deputy Sheriff Ventrella for writing an inadequate report and offered her overtime to rewrite it. Sgt. Baratta then shouted, "This is what happens when women are on the job." (Defs.' Local Rule 56.1(a) Resp. ¶ 45.) Deputy Sheriff

Ventrella felt threatened, scared, and embarrassed. (*Id.* ¶ 46.) Watch Cmdr. Calderone interceded and then dismissed Deputy Sheriff Ventrella, ending the confrontation.

On July 15, 1997, Plaintiff wrote a memorandum to Asst. Chief Sacco complaining about Sgt. Baratta's preferential treatment of deputies and harassment of Plaintiff and other women. The memorandum included thirteen paragraphs, most of which conveyed statements allegedly made by Sgt. Baratta which Plaintiff felt were derogatory toward women—e.g., Sgt. Baratta's statement about needing "more balls" around the workplace, Sgt. Baratta's statement about Lt. Ribaldo's falling over with "her big tits," etc. Plaintiff indicated that she was tired of being treated unfairly by Sgt. Baratta and called on Asst. Chief Sacco for help. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶ 33.)

Shortly after receiving Plaintiff's July 15 memorandum, Asst. Chief Sacco presented it to Sgt. Baratta and asked him to respond to it. (*Id.* ¶ 34.) Sgt. Baratta responded on July 23, 1997, denying the allegations made by Plaintiff. (*Id.* ¶ 42.) Sgt. Baratta claimed that, prior to receiving the July 15 memorandum, no one had ever informed him about Plaintiff's complaints of harassment. (Defs.' Local Rule 56.1(a) Resp. ¶ 62.)

Two days later, Asst. Chief Sacco wrote a memorandum to Director of Internal Affairs Robert Goldsmith. Asst. Chief Sacco also forwarded to Goldsmith copies of all memoranda submitted by Plaintiff and Sgt. Baratta. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶ 45.) On July 29, 1997, Goldsmith wrote a memorandum to Inspector General Joseph Shaughnessy, categorizing Plaintiff's complaints as "alleged sexual harassment against Sgt. Baratta." (*Id.* ¶ 47.) Goldsmith also forwarded to Shaughnessy copies of all memoranda submitted by Plaintiff and Sgt. Baratta. (*Id.*)

On July 31, 1997, Luke Ballo began investigating Plaintiff's complaints about Sgt. Baratta. The investigation included interviews with over twenty-five witnesses. (*Id.* ¶ 49.) In the end, Ballo concluded that Plaintiff's allegations against Sgt. Baratta were supported by sufficient evidence to justify a reasonable conclusion of Sgt. Baratta's fault. (Defs.' Local Rule 56.1(a) Resp. ¶ 64.) This conclusion, however, was later set aside. (*Id.* ¶ 66.)

Plaintiff's final day at work was on July 25, 1997. (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶¶ 44, 46, 48.) She had reached her "breaking point" and could not tolerate Sgt. Baratta's conduct anymore. On July 29, 1997, Dr. Stephen Michel diagnosed Plaintiff with depression. (Defs.' Local Rule 56.1(a) Resp. ¶ 76.) He also ordered Plaintiff not to return to work. (*Id.* ¶¶ 81, 93.) Accordingly, Plaintiff has been on medical leave since July 29, 1997. (*Id.* ¶ 84.)

On October 1, 1997, Plaintiff filed a charge against Defendants with the Illinois Department of Human Rights alleging sex discrimination and sexual harassment. Then, on June 29, 2000, Plaintiff filed a complaint against Defendants in federal court alleging the same. Defendants now attack Plaintiff's claims pursuant to Rule 56(c).

## II.  Discussion

Defendants' Motion for Summary Judgment attacks each of Plaintiff's claims on more than one ground. Particularly, Defendants argue that they are entitled to summary judgment on Plaintiff's discrimination claim because Plaintiff cannot show that she suffered an adverse employment action and, with respect to her burden under *McDonnell Douglas Corp.*, because Plaintiff has failed to show that Defendants treated a similarly situated male deputy sheriff more favorably than Plaintiff. Next, Defendants claim that they are entitled to summary judgment on

Plaintiff's sexual harassment claim either because Plaintiff has failed to establish the existence of a hostile work environment or because Defendants are able to establish all elements of the *Ellerth/Faragher* affirmative defense. After setting forth the applicable standard of review, each of these arguments is addressed below.

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir. 1990). In considering a motion for summary judgment, a court must construe all evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In cases where the nonmoving party bears the burden of proof at trial, the moving party bears the initial burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Provided that burden is met, the nonmoving party must show that evidence establishes the existence of each element essential to her case. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex Corp.*, 477 U.S. at 322).

**B.    Sex Discrimination Claim**

To prevail on a claim for employment discrimination, a plaintiff may present direct or indirect evidence of discriminatory intent. *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001); *Liner v. Dontron Inc.*, No. 99 C 1261, 2000 WL 1648960, at *4 (N.D. Ill. Oct. 27, 2000); *Ferguson v. Kinney Shoe Corp.*, Nos. 98 C 7361, 98 C 1639, 1999 WL 299311, at *6 (N.D. Ill. Apr. 30, 1999). Direct evidence of discriminatory intent relates to the specific adverse employment action in question and, if believed by the trier of fact, proves the particular fact in question without reliance on inference or presumption. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999); *Harris v. Univ. of Ill. at Chi.*, No. 97 C 4783, 1999 WL 281346, at *7 (N.D. Ill. Mar. 31, 1999) (quoting *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998)). Thus, direct evidence is usually an acknowledgment that the challenged adverse employment action was taken because of the employer's prejudice. *Pitasi*, 184 F.3d at 714. Alternatively, in the absence of direct evidence of discriminatory intent, a plaintiff may rely on indirect evidence to raise an inference of discriminatory intent. To raise such an inference, the plaintiff must show that she is a member of a protected class, that she suffered an adverse employment action, that she was performing her job satisfactorily, and that similarly situated people outside of her protected class were treated more favorably than she. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997); *Liner*, 2000 WL 1648960, at *5. The defendant may then rebut the inference by showing that its actions were legitimate. *McDonnell Douglas Corp.*, 411 U.S. at 802. If this burden is met, the plaintiff must show that the proffered reason is a pretext. *Id.* at 804.

Here, Plaintiff claims that she suffered the following adverse employment actions: being disciplined without cause on or around July 7; being isolated from coworkers on July 7; being pushed over the edge into depression and thus forced to take medical leave; and being forced to take on difficult work assignments in unfamiliar districts. (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 19-20.) The unfounded discipline, Plaintiff claims, relates to Sgt. Baratta's counseling Plaintiff because she failed to serve a sufficient number of summonses on July 5 and July 6, and Sgt. Baratta's informing Asst. Chief Sacco, through the Summary Punishment Action Request, that Plaintiff failed to immediately report the malfunction of her radio on July 5. The isolation concerns Plaintiff's not being able to work near her coworkers on July 7 after being counseled by Sgt. Baratta. The depression and resultant medical leave apparently flows out of each and every contact Plaintiff had with Sgt. Baratta at the Maywood facility rather than one particular incident. And the delegation of difficult work assignments pertains to Sgt. Baratta's making Plaintiff serve more summonses under more difficult conditions than other deputy sheriffs.

First, we reject Plaintiff's argument that on or around July 7 she received discipline that amounted to an adverse employment action. The counseling, which appears analogous to receiving oral reprimands or an unfavorable review, had no effect on the terms, conditions, or privileges of Plaintiff's employment and thus is not actionable as an adverse employment action. *See Haugerud*, 259 F.3d at 691-92; *Sweeney v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998); *Smart v. Ball State Univ.*, 89 F.3d 437, 441-42 (7th Cir. 1996); *Needy v. Vill. of Woodridge*, No. 96 C 5188, 1997 WL 461093, at *6 (N.D. Ill. Aug. 8, 1997). Sgt. Baratta's Summary Punishment Action Request was set aside by Asst. Chief Sacco (Pl.'s Local Rule 56.1(b)(3)(A) Resp. ¶ 22) and therefore had no effect on the terms, conditions, or privileges of Plaintiff's employment,

either. *See Ajayi v. Aramark Bus. Servs., Inc.*, No. 00 C 4403, 2002 WL 1160945, at *6 (N.D. Ill. May 30, 2002) ("An unfulfilled threat to demote . . . does not constitute an adverse employment action.").

We also find that Sgt. Baratta's July 7 decision to temporarily assign Plaintiff to an isolated table did not amount to an adverse employment action. The table assignment and ensuing isolation experienced by Plaintiff may have been embarrassing but, as a brief, one-time event, it had no effect on the terms, conditions, or privileges of Plaintiff's employment. *See Smart*, 89 F.3d at 441; *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (pointing out that "public perceptions were not a term or condition of [the plaintiff's] employment"); *Stewart v. Gen. Motors Corp.*, No. 99 C 0628, 2001 WL 710106, at *11 (N.D. Ill. June 22, 2001) ("Minor changes in the routine for one single day do not rise to the level of an adverse employment action."); *cf. Collins v. State of Ill.*, 830 F.2d 692, 703-04 (7th Cir. 1987) (holding that a permanent transfer accompanied by alterations to professional duties amounted to an adverse employment action).

Next, we agree with Defendants that Plaintiff's depression and resultant medical leave did not constitute an adverse employment action.[5] Adverse employment actions affect objective conditions of employment and fall within the special province of the employer. They do not embrace a responsive action on the part of an employee that alters the terms, conditions, or privileges of her employment, and they do not extend to the subjective impact of a particular action on an employee's psyche. *Swanson v. Allstate Ins. Co.*, 102 F. Supp. 2d 949, 971 n.16 (N.D. Ill. 2000); *Finnane v. Pentel of Am. Ltd.*, Nos. 98 C 5187, 99 C 0189, 2000 WL 288437, at

---

[5] We note that Plaintiff has failed to cite a single case to support this argument.

*8 (N.D. Ill. Mar. 14, 2000); *Marsicano v. Am. Soc'y of Safety Eng'rs*, No. 97 C 7819, 1998 WL

603128, at *6 (N.D. Ill. Sept. 4, 1998). We reject Plaintiff's attempt to create an adverse

employment action out of the consequence of an action not itself an adverse employment action.

Finally, we hold that Plaintiff cannot rely on the fact that she received difficult work

assignments in unfamiliar districts to show that she suffered an adverse employment action.

Significantly, Plaintiff never contends that anyone asked her to do work that fell outside of her

job description, nor does Plaintiff contend that her job duties or responsibilities significantly

changed in any way. *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994); *Hanson v. Cytec

Indus.*, No. 399CV86(CFD), 2002 WL 519714, at *3 (D. Conn. Mar. 8, 2002) (indicating that

minor alterations of job responsibilities do not amount to adverse employment actions); *Carl v.

Parmely*, 188 F. Supp. 2d 991, 1005 (S.D. Ill. 2001) (finding no adverse employment action

where the plaintiff received the worst and riskiest assignments within her job description without

a partner). Plaintiff may have been unhappy about the location of some of her assignments. But

"[t]he realities of the workplace dictate that employees do not always have the option to work in

the location they desire. Employees must often go where they are needed most." *Little v. State of

New York*, No. 96 CV 5132(SJ), 1998 WL 306545, at *5 (E.D.N.Y. June 8, 1998).

In terms of Plaintiff's ability to show discriminatory intent by way of indirect evidence,

we conclude that Plaintiff's failure to present evidence of similarly situated male deputy sheriffs

serves as an additional ground for the entry of summary judgment. *See McDonnell Douglas

Corp.*, 411 U.S. at 802; *Oates*, 116 F.3d at 1171. Plaintiff claims that she was subjected to more

difficult work assignments than male deputy sheriffs (Defs.' Local Rule 56.1(a) Resp. ¶ 69), but

Plaintiff fails to point to a single male deputy sheriff with similar seniority, training, education,

experience, etc., working on the same shift as Plaintiff and under the direction of the same supervisor. *See Harris*, 1999 WL 281346, at *10 ("With respect to the similarly situated requirement, 'all of the relevant aspects of the employment situation [must be] nearly identical . . . the similarity between the compared employees must exist in all relevant aspects of their employment circumstances.'" (quoting *Blackwell v. Bob Evans Farms, Inc.*, No. 94 C 7703, 1996 WL 406654, at *4 (N.D. Ill. July 17, 1996))). Without this information the charts and data logs submitted by Plaintiff are wholly ineffective to show disparate treatment.

In conclusion, Defendants' motion for summary judgment on Plaintiff's sex discrimination claim is granted. Plaintiff has failed to show that she suffered an adverse employment action as a matter of law. An additional ground for entering summary judgment on Plaintiff's showing of indirect evidence of discriminatory intent is that Plaintiff has failed to present evidence that Defendants treated similarly situated male deputy sheriffs more favorably than Plaintiff.

### C. Sexual Harassment Claim

For a sexual harassment claim to be actionable, the harassment must be sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create a hostile or abusive working environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). When ruling on a sexual harassment claim, courts must examine the totality of the circumstances, which includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the plaintiff's] work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993);

*Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 534-35 (7th Cir. 1993). Ultimately, the trier of fact must conclude that the environment was hostile both from an objective perspective and from the plaintiff's subjective perspective. *Harris*, 510 U.S. at 21-22. In other words, the plaintiff must show not only that she found the environment to be hostile or abusive, but that a reasonable person would have also perceived it to be so. *Id.*; *Saxton*, 10 F.3d at 534.

Because a hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice, courts must not carve up the incidents of harassment to see if each incident rises to the level of being severe or pervasive. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1044-45 (7th Cir. 2000); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). Additionally, courts must not allow their analyses to be limited by the 300-day time period contained in 42 U.S.C. § 2000e-5(e)(1), provided that at least one act contributing to the claim occurred within the relevant time period. *Nat'l. R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2074 (2002).

According to Plaintiff, virtually every day she witnessed Sgt. Baratta grab his testicles and say, "[T]his is what we need around here, more balls." (Pl.'s Aff. ¶ 19.) On a regular basis Sgt. Baratta made remarks about the anatomies of female deputy sheriffs such as "look at the tits on her," "what an ass she has," "she should be falling over because of her big tits," and "her tits are in high gear." (Defs.' Local Rule 56.1(a) Resp. ¶¶ 27-29, 50.) Plaintiff also complained that Sgt. Baratta made comments about "blow jobs and [about] who did this and . . . that." (*Id.* ¶ 55.) Plaintiff found these comments and actions to be vulgar, offensive, and highly degrading.

In addition to this, Plaintiff presents evidence that Sgt. Baratta made threatening comments to Plaintiff that were derogatory toward women. In July 1997, Sgt. Baratta stated that

"[h]e was the fucking boss and that [Plaintiff] had better fucking do as [told]. This is not a woman's job. Every time a fucking woman is involved everything is ruined. We don't need any fucking women around here." (*Id.* ¶ 33.) Also in July 1997, Sgt. Baratta ignored Plaintiff's questions about work distribution and said, "[D]on't question what I do, just do what I say. That's why we don't need women in this unit always asking questions." (*Id.* ¶ 34.) Plaintiff witnessed Sgt. Baratta make a similar remark to Deputy Sheriff Ventrella on July 11, 1997: "This is what happens when women are on the job." (*Id.* ¶ 45.) Deputy Sheriff Ventrella felt threatened, scared, and embarrassed. (*Id.* ¶ 46.)

As a whole, construing all of the evidence and drawing all reasonable inferences therefrom in the light most favorable to Plaintiff, we believe that a reasonable jury could find that Plaintiff encountered an actionable hostile work environment at the Maywood facility. Sgt. Baratta's lewd comments were commonplace and his boorish conduct was routine. *See Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998). In addition, Plaintiff and Deputy Sheriff Ventrella felt threatened by Sgt. Baratta when he would yell at them. Plaintiff complained about Sgt. Baratta on multiple occasions, tending to prove that Plaintiff found her work environment to be hostile. *See Haugerud*, 259 F.3d at 695; *Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 851 (7th Cir. 2001); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1454 (7th Cir. 1994). Yet these complaints were ignored.

The facts of this case resemble those of *Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151 (8th Cir. 1999), and *Needy*, 1997 WL 461093. In *Breeding*, the Eighth Circuit found sufficient evidence of a hostile environment where a supervisor regularly fondled his genitals in front of his employees and used lewd and sexually inappropriate language. 164 F.3d at 1159.

- 16 -

The district court in *Needy* found sufficient evidence of a hostile environment where sexually explicit material was left around the department and a supervisor and some coworkers regularly harassed and intimidated female employees with profanity, name calling, and verbally abusive reprimands. 1997 WL 461093, at *5. Like the courts in *Breeding* and *Needy*, we cannot say that Sgt. Baratta's comments and actions are insufficient as a matter of law to constitute actionable sexual harassment, and therefore Defendants' motion for summary judgment on this claim is denied.

### D.     *Ellerth/Faragher* Affirmative Defense

In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court established the law of employer liability in the supervisor harassment context. The Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus.*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. If no tangible employment action was taken, however, the employer may avoid strict liability by raising an affirmative defense, subject to proof by a preponderance of the evidence. *Id.* The affirmative defense comprises two elements: "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* The affirmative defense encourages employers to set up antiharassment policies and impels employees to utilize the preventative or remedial measures established therein to avoid or

mitigate harm. *Faragher*, 524 U.S. at 806; *Gawley v. Ind. Univ.*, 276 F.3d 301, 312 (7th Cir. 2001).

At the outset, we iterate that Plaintiff has failed to show that she suffered an adverse employment action. *See infra* pp. 11-13. Thus, Defendants have properly raised the *Ellerth/Faragher* affirmative defense, and we focus our attention on the two elements of the defense.

Defendants adopted a formal sexual harassment policy in 1994. Under the policy, an employee who believes that he or she is being harassed should tell the harasser to stop and then "contact his/her Supervisor/Manager to inform that person of [the] incident of sexual harassment. If that Supervisor/Manager is the alleged harasser, the employee should contact the next person in the chain of command." (Defs.' Ex. 10 at 6.) The contacted Supervisor/Manager "may attempt to remedy the situation at that level by confronting the parties. If this fails and/or if the employee wishes to make a complaint, the Supervisor/Manager shall request written memoranda from all involved parties." (*Id.*)

If memoranda are filed by the parties, the contacted Supervisor/Manager "shall report this information in writing to the Director of that Department or his/her Designee." (*Id.*) "The Director should then notify the Inspector General in writing of [the] incident." (*Id.*) Once notified, the "Office of the Inspector General shall investigate, or refer to the concerned unit for investigation, the claim of sexual harassment. The investigation will include the interviewing of potential witnesses and examining of any documents or written statements which may be pertinent to the alleged incident. Upon completion of the investigation, the Inspector General or

- 18 -

the concerned unit shall advise the Director in writing of their findings. The Director [then] shall recommend disciplinary action to the Undersheriff in writing . . . ." (*Id.*)

Defendants rely on the existence of this harassment policy to prove their affirmative defense. They contend that the policy represents an exercise of reasonable care to prevent and correct any sexually harassing behavior, that Plaintiff unreasonably failed to avail herself of the preventative and corrective opportunities in the policy until July 1997, and that, because Plaintiff left the workplace in July 1997, Defendants had no opportunity to remedy the alleged abuses that Plaintiff reported.

We disagree with Defendants' assertion that Plaintiff failed to avail herself of the harassment policy's preventative and corrective opportunities until July 1997 as a matter of law. The harassment policy places the following burden on the employee being harassed: the employee should tell the harasser to stop and then contact a supervisor or manager to inform that person of the incident of sexual harassment. On this record, a reasonable jury could find that Plaintiff told Sgt. Baratta to stop harassing her. Plaintiff claims that she made this request on multiple occasions. (Defs.' Local Rule 56.1(a) Resp. ¶¶ 48, 50.) A reasonable jury could also find that Plaintiff informed a supervisor about Sgt. Baratta's harassment as early as April or May of 1996, when Plaintiff complained to Sgt. Saviano. (Pl.'s Dep. at 115.) And, a reasonable jury could find that Plaintiff informed a supervisor about Sgt. Baratta's harassment when Plaintiff met with Watch Cmdr. DeTolve and Asst. Chief Geraci in April or May of 1996. (Defs.' Local Rule 56.1(a) Resp. ¶¶ 52, 54-55.) Finally, a reasonable jury could find that Plaintiff informed a supervisor about Sgt. Baratta's harassment when Plaintiff met with Deputy Chief Kirst and Chief O'Leary in May or June of 1996. (*Id.* ¶ 50.) All of these contacts demonstrate a reasonable effort

by Plaintiff to reach out for help and mitigate her damages in compliance with Defendants' harassment policy. *See Haugerud*, 259 F.3d at 699-700 (complying with any one of the employer's reporting options is evidence of reasonably taking advantage of the harassment policy).

When Plaintiff informed Sgt. Saviano about Sgt. Baratta's harassment, Sgt. Saviano gave Plaintiff permission to go through the chain of command and contact Watch Cmdr. DeTolve and Asst. Chief Geraci. (Pl.'s Dep. at 115.) So, Plaintiff contacted and complained to Watch Cmdr. DeTolve and Asst. Chief Geraci about Sgt. Baratta's actions and comments about women's breasts, "blow jobs," and "who did this and . . . that." (Defs.' Local Rule 56.1(a) Resp. ¶ 55.) Plaintiff asked Watch Cmdr. DeTolve and Asst. Chief Geraci to do something about Sgt. Baratta. (*Id.*) Watch Cmdr. DeTolve and Asst. Chief Geraci assured Plaintiff that something would be done. (*Id.* ¶ 56.) A month later, in May or June of 1996, Plaintiff participated in a meeting with Deputy Chief Kirst and Chief O'Leary to complain about Sgt. Baratta's actions and comments. Plaintiff told Deputy Chief Kirst and Chief O'Leary that Sgt. Baratta regularly used foul language in the presence of female deputy sheriffs, that Sgt. Baratta regularly made comments about the anatomies of female deputy sheriffs such as "look at the tits on her" or "what an ass she has," and that Sgt. Baratta regularly grabbed his testicles and said, "[T]his is what the Sheriff's Department needs, more balls." (*Id.* ¶ 50.) Deputy Chief Kirst, like Watch Cmdr. DeTolve and Asst. Chief Geraci, stated that she would take care of it. (*Id.* ¶ 51.)

It is undisputed that no one ever spoke to Sgt. Baratta about Plaintiff's complaints until July 1997. (*Id.* ¶ 62.) From this, coupled with the facts narrated above, a reasonable jury could find multiple failures of Defendants' harassment policy. Each of the supervisors contacted by

Plaintiff failed to attempt to remedy the situation by confronting the involved parties as each was required to do according to Defendants' harassment policy. And each of the supervisors that Plaintiff complained to about Sgt. Baratta failed to request memoranda from all of the involved parties as each was required to do according to Defendants' harassment policy. These failures provide sufficient evidence to call into question Defendants' exercise of reasonable care to prevent and promptly correct sexually harassing behavior, and therefore Defendants' motion for summary judgment on this issue is denied. *Cf. Gawley*, 276 F.3d at 312 (involving a plaintiff who failed to follow the formal complaint procedure established by the defendant).

We find unpersuasive Defendants' distinction between formally informing or complaining to a supervisor, and informally informing or complaining to a supervisor (more accurately described as the difference between informing or complaining in writing and informing or complaining orally). The distinction finds no support in Defendants' harassment policy. As indicated above, the initial burden on the employee is to inform a supervisor about the harassment. It is clear that at this stage no writing is required. Likewise, a writing is not required to trigger the supervisor's duty to request memoranda from all of the involved parties. Even here, the employee need only complain.

## III.  Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment is granted in part and

denied in part.  Proceedings will continue on Plaintiff's sexual harassment claim.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:**  August 6, 2002.

Copies have been mailed to:

MICHAEL LEE TINAGLIA, Esq.
Law Offices of Michael Lee Tinaglia, Ltd.
161 North Clark Street
Suite 2550
Chicago, IL 60601

Attorneys for Plaintiff

MAUREEN P. FEERICK, Esq.
DONALD R. HALLSTEN, JR., Esq.
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, IL 60602

Attorneys for Defendants